1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAROLYN WALKER,

                    Plaintiff,

        v.

CAROLYN W. COLVIN,

                    Defendant.

Case No.  15-cv-05369-WHO

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 19

## INTRODUCTION

Plaintiff Carolyn Walker seeks benefits based on her alleged disabilities of depression and rheumatoid arthritis.  In finding that she is not disabled, the ALJ made some mistakes that I discuss in this Order.  But the mistakes do not amount to legal error that is consequential to the ultimate non-disability determination.  Substantial evidence supports the way the ALJ weighed the medical and non-medical opinions.  As a result, I DENY plaintiff's motion for summary judgment and GRANT the Commissioner's cross-motion for summary judgment.

## BACKGROUND

### I.  PROCEDURAL HISTORY

On November 15, 2011, plaintiff Carolyn Walker filed an application for supplemental security income ("SSI"), alleging disability starting on November 27, 1996.[1]  The application was

_____

[1] Walker previously filed for disability benefits in May 2007, July 2009, and October 2010.  AR 308-23, 329-45, 357-71.  In May 2007, Walker's asserted impairments were arthritis, blood disease, blindness in her left eye, asthma, and a bone fracture.  AR 311.  In July 2009, Walker's asserted impairments were arthritis, blood disease, and blindness in her left eye.  AR 334.  In October 2010, Walker's asserted impairments were rheumatoid arthritis and pain and swelling in

denied initially on June 14, 2012, and upon reconsideration on January 18, 2013.  Walker filed a request for a hearing on January 29, 2013, and she appeared and testified at a hearing before an Administrative Law Judge (ALJ) on April 24, 2014. AR 28.  In an opinion dated May 5, 2014, the ALJ denied Walker's claim for benefits, finding that she retained the Residual Functional Capacity ("RFC") to perform light work with limitations.  AR 34.  Walker appealed that denial to the Appeals Council on May 28, 2014, and the Appeals Council denied review on October 30, 2015.  Walker filed this case on November 24, 2015, and now moves for summary judgment.  The Commissioner opposes her motion and cross-moves for summary judgment.

## II.  FACTUAL BACKGROUND

### A.  Medical Evidence

On November 2, 2009, examining state agency physician Dr. Farah Rana completed an internal medicine evaluation of Walker.  AR 455-59.  At the examination, Walker reported having shortness of breath, left knee pain, and a lump in her left breast.  AR 455.  She denied having any other chronic medical conditions or any history of depression.  *Id*.  She also stated that she was not taking any pain medications.  *Id*.  Rana found that Walker had some shortness of breath, probably due to her smoking one pack of cigarettes a day, and that she had a "high probability of chronic obstructive pulmonary disease."  AR 457.  She also found that Walker has left knee pain, possibly indicating mild arthritis.  *Id*.  Rana concluded that Walker could perform the physical requirements of "medium work" and stand and walk for six hours in an eight-hour work day, carry 25 pounds frequently and 50 pounds occasionally, and push and pull devices up to 50 pounds.  *Id*.  Walker would have some difficulty bending, climbing and crouching due to her left knee pain, but would not need an assistive device.  *Id*.

Rana examined Walker for a second time on January 26, 2011.  AR 476-78.  This time Walker's chief complaints were shortness of breath, hepatitis C, and rheumatoid arthritis.  AR 476.  Walker reported being diagnosed with rheumatoid arthritis in October 2010, after she was hospitalized with pneumonia. *Id*.  She stated that she was experiencing painful swelling in her

her joints.  AR 361.  Each of these applications was denied.

United States District Court
Northern District of California

hands and right knee, and that the pain sometimes traveled to her elbows and knees.  *Id*.  She was taking Motrin and Aleve for her joint aches.  *Id*.  Walker reported that she was diagnosed with hepatitis C and that she used to use cocaine but had been clean for a month.  AR 477.  She had also been trying to cut back on smoking to alleviate her shortness of breath, which limited her to very light chores around the house.  AR 476.  Rana found that Walker had mild tenderness in her interphalangeal joints but no other swelling or inflammation in her hands and other joints.  AR 477.  Rana also found that Walker had shortness of breath and "probable chronic obstructive pulmonary disease."  AR 478.  Rana concluded that Walker could perform "light work," stand and walk for six hours in an eight hour work day with breaks, carry 10 pounds frequently and 20 pounds occasionally, push and pull devices up to 20 pounds, and had no postural limitations.  *Id*.

On February 8, 2011, non-examining state agency consultant Dr. Beverley Morgan issued a Disability Determination Explanation based on her review of Walker's medical records.  AR 72-80.  She found that Walker was only partially credible in light of the fact that there were "no significant PE findings" to support her claims of rheumatoid arthritis, pain, and swelling.  AR 77.  In regards to Walker's RFC, Morgan found that she could lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk for six hours in an eight hour work day, sit for six hours, and that she had no postural, manipulative, communicative, or environmental limitations. AR 77-78.  Morgan concluded that Walker was not disabled and could perform the full range of light work.  AR 79-80.

On October 2, 2011, Walker's 23 year old son was fatally shot while attending a party in San Leandro.  AR 635.  On January 13, 2012, Dr. Ede Thomsen, a psychological examiner, conducted a comprehensive evaluation of Walker.  AR 634-46.  Thomsen conducted a clinical interview and tests including but not limited to: Repeatable Battery for the Assessment of Neuropsychological Status (RBANS), Annotated Mini Mental State Examination (AMMSE), Barona Estimate, Beck Depression Inventory, and Millon Clinical Multiaxial Inventory-III (MCMI-III).  AR 636.  The Beck Depression Inventory results indicated that Walker was experiencing minimal depression.  AR 638.  However, Thomsen also found that Walker had alexithymia or "a deficiency in the ability to identify and express emotions."  *Id*.  Thomsen stated

3

that the alexithymia may have caused Walker to "under endorse symptoms on [the Beck Depression Inventory]" and that her depression level is likely higher than the Inventory indicated. *Id*. Walker's MCMI-III results indicated severe depression. *Id*. Thomsen diagnosed Walker with Major Depressive Disorder, Bereavement, and Cocaine Dependence in Early Full Remission. AR 642-43. She also found that Walker had mild to severe limitations in long-term memory, language, judgment/insight, executive functioning, and social functioning. *Id*. Additionally, Walker had moderate to marked limitations in her ability to interact with others and perform in a normal work environment. AR 645-46. Thomsen noted that Walker's social and cognitive inabilities "seem to be the result of her psychiatric symptoms" and that her "social isolation and alienation would make working effectively with others difficult." AR 642.

On April 17, 2012, Dr. Jenner Brimmer, a state agency examining physician, conducted a comprehensive internal medicine evaluation of Walker. AR 648-53. Walker's chief complaint during the exam was rheumatoid arthritis. AR 648. She reported pain and swelling in her joints, especially her hands and knees, which has limited her to standing 20 minutes, walking two blocks, and lifting 15 pounds. *Id*. Walker stated that she can cook and do household chores "as long as she takes her medications," and that she was currently taking Prednizone and Ibuprofen. AR 648-49. Brimmer did not find "any significant redness, deformities, swelling or crepitus of the joints of [Walker's] hands" or knees, but noted that "[her] left knee has some mild crepitus." AR 651. She found that Walker had rheumatoid illness but it was "unclear if this is rheumatoid arthritis or PAN," and also noted a "[h]istory of hepatitis C virus infection." *Id*. Brimmer concluded that Walker could stand and walk for six hours; lift 20 pounds occasionally and 10 pounds frequently; perform postural activities such as climbing and stooping occasionally; and manipulate without limitations. AR 651-52. She also noted that Walker is immune-suppressed on Prednisone and "would need to avoid infectious sources." AR 652.

On April 30, 2012, non-examining state agency consultant Dr. E. L. Gilpeer issued a Disability Determination Explanation based on Walker's medical records. AR 82-94. Gilpeer found that Walker could lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk for six hours in an eight hour work day, sit for six hours, and climb, balance, stoop, kneel, and

United States District Court
Northern District of California

1    crouch occasionally.  AR 90-91.  Gilpeer concluded that Walker was not disabled and could

2    perform the full range of work.  AR 92-93.

3         On May 20, 2012, Dr. Kyle Van Gaasbeek, a state agency psychiatric examiner, completed

4    a comprehensive psychiatric evaluation of Walker.  AR 654-58.  Van Gaasbeek found Walker to

5    be a "reliable historian."  AR 654.  At the consultation, Walker stated that she had been suffering

6    from rheumatoid arthritis for the past two years but that Prednisone and Ibuprofen had been

7    helping her symptoms.  *Id*.  She reported that she had been depressed for the last six months due to

8    the passing of her son, but she had not received treatment for her depression.  *Id*.  She also stated

9    that she stopped using cocaine about two years prior and relied on her daughter for most

10   household chores.  AR 654-55.  Van Gaasbeek diagnosed Walker with adjustment disorder with

11   depressed mood, cocaine dependence in remission, rheumatoid arthritis, hepatitis C, chronic

12   obstructive pulmonary disease, and bereavement.  AR 656.  He concluded that Walker's

13   depression was treatable and that she was likely to "fully recover, even without treatment."  AR

14   656-57.  In regard to functionality, Van Gaasbeek found that Walker was unimpaired in almost

15   every category except her "ability to complete a normal workday without interruptions from a

16   psychiatric condition is mildly impaired."  AR 657.  He also found that Walker had "low-average"

17   intellectual functioning, "limited" fund of knowledge and abstract thinking skills, and "reduced"

18   calculation skills.  AR 656.

19        On December 18, 2012, Rana completed another internal medicine evaluation of Walker.

20   AR 668-71.  Walker reported that her rheumatoid arthritis was causing her significant joint pain in

21   her hands, knees, and feet and that she was taking Aleve for the pain.  AR 668.  She stated she had

22   not used cocaine for almost a year and denied having hepatitis B or C or excessive shortness of

23   breath.  *Id*.  She said that her joint pain limited her to doing minimal chores around the house.  *Id*.

24   Rana found mild tenderness in Walker's interphalangeal joints and both her knees, and limited

25   range of motion in her left knee.  AR 669.  Rana noted that Walker had a mild limp.  *Id*.  Rana

26   concluded that Walker could perform light work, stand and walk for 6 hours with breaks in an 8

27   hour work day, sit for six hours with breaks, carry 25 pounds frequently and 50 pounds

28   occasionally, push and pull devices up to 50 pounds, and stoop, bend, kneel, crouch, and climb on

1    a frequent basis.  AR 670.

2        Morgan, a non-examining state agency consultant, issued her second Disability

3    Determination Explanation on January 10, 2013.  AR 96-111.  She found that Walker had the RFC

4    to lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk for six hours in an eight

5    hour work day, sit for six hours, and climb, balance, stoop, kneel, and crouch occasionally.  AR

6    107-8.  Morgan concluded that Walker was not disabled and could perform the full range of light

7    work.  AR 110-11.[2]

8        The medical record also contains treatment notes from Highland Hospital from November

9    2009 to August 2011, and labs and progress reports from June 2012 to October 2013.  AR 487-

10   555, 690-700.  Most of the notes from November 2009 to August 2011 found that Walker did not

11   have significant joint swelling or arthritis.  AR 493, 508 (finding "no swelling\E\tenderness in the

12   extremities, no edema"); 503 (finding "no joint swelling or pain, full range of motion, no []

13   swelling, largely unremarkable"); 532 (finding that extremities were "[w]arm and well perfused"

14   and there was "no arthritis").  Some treatment notes found mild swelling.  AR 500 (finding that

15   right knee was "diffusely tender" with "mild effusion" and "[s]lightly decreased [range of

16   motion]"); 505 (finding "no obvious swelling" in hands but "decreased [range of motion in]

17   fingers and generalized tenderness").  The labs and progress reports from June 2012 to October

18   2013 found either mild swelling or no swelling.  AR 699 (finding "synovitis" as well as "mild

19   effusion" in the right knee and ankle); 700 (noting "[n]o joint swelling, edema, [or] tenderness

20   elicited").

21       On February 3, 2013, Walker's treating nurse practitioner Kelly Manashil ("Manashil")

22   provided a medical opinion.  AR 681-83.  Manashil had been treating Walker at Highland Hospital

23   since March 2011.  AR 681, 683.  Walker complained of pain and stiffness in her hands, elbow,

24   knee, and ankle.  Id.  Based on an "objective exam of [Walker's] joints," Manashil found that

25   Walker had bilateral hand pain and swelling, as well as swelling in her right knee and ankle.  AR

26

27   ───────────────

28   [2] On January 14, 2013, state agency psychiatric consultant Dr. Phaedra Caruso-Radin reviewed the psychiatric evidence and agreed with the agency's initial determination that Walker was not disabled as a result of mental health impairments.  AR 104.

United States District Court
Northern District of California

6

1    681-82.  As a result, she concluded that Walker could lift and carry less than10 pounds frequently

2    and occasionally, and stand, walk, and sit less than two hours in an eight hour work day.  *Id*.

3    Manashil found that Walker can sit for 30 minutes and stand for 10 minutes before changing

4    positions.  *Id*.  She could perform postural activities such as twisting, crouching, and climbing

5    occasionally.  AR 682.  Additionally, Manashil found that Walker had difficulty manipulating

6    objects "[d]ue to pain and swelling in both hands."  *Id*.  Manashil also noted that Walker may be

7    sensitive to certain environmental conditions due to "medication that reduces immunity," and that

8    she would likely miss work more than three times a month.  AR 683.  Manashil concluded that

9    Walker's "pain and/or medications" would result in "[m]ild" limitations on her ability to function

10   on a typical work day.  *Id*.

**B.  ALJ Hearing and Walker's Testimony**

12        At the hearing, Walker's attorney objected to the inclusion in the record of the examination

13   records and opinions of Rana, based on a Social Security regulation allowing claimants to object

14   to having an examination conducted by someone who had previously issued a report resulting in

15   an adverse disability determination.  AR 51-53.  The ALJ explained that in his opinion, under the

16   regulations, "the burden is on the claimant to raise an objection before the examination."  AR 52.

17   Walker's attorney responded that there was no way for Walker to know beforehand who the

18   examiner was going to be, and therefore the regulation should allow for post-examination

19   objections.  *Id*.  The ALJ concluded that he "[didn't] see any reason to exclude [the] reports"

20   absent a showing that Rana was "somehow prejudiced" against Walker.  AR 53.  Walker's

21   attorney admitted that he did not contend that Rana had an adverse interest to Walker or was

22   biased in any way.  *Id*.

23        During the ALJ's questioning, Walker testified that she sometimes has trouble taking

24   public transportation due to pain in her left knee.  AR 54.  Walker testified that she had only used

25   cocaine once or twice in the past year.  AR 56.  She also stated that before then she had "been

26   using [cocaine for] most of [her] life" about "three times a week," with the exception of a brief

27   period of sobriety in the 1980's.  *Id*.

28        In response to the ALJ's questions about daily activities, Walker testified that she "love[s]

United States District Court
Northern District of California

cleaning" but that she "pay[s] for it in the end" because of her arthritis.  AR 57.  When asked about her medication, Walker testified that she "love[s]" taking Methotrexate because it helps "[keep her] out of pain."  AR 58.  She also testified that she "cook[s] every day" and does other chores occasionally, but activities like "pulling the clothes out of the washing machine " and "chopping up the meat" makes her hands swell.  AR 60.  She testified that she can only lift about 15 pounds and sit for 15 minutes before she has to get up, but that she enjoys walking.  AR 59.  Walker also stated that she sometimes needs help getting out of bed.  AR 60.  When asked if she had any friends, Walker responded, "No, I don't trust nobody" and that she was "scared," so her interactions were mostly limited to her sister, children, and grandchildren.  AR 61.  She said that she used to go to church when she was "clean and sober" but did not do so anymore.  *Id.*

When asked about household chores by her attorney, Walker testified that she cooks every day and does other chores such as cleaning about once a week. AR 62.  She stated that she will be sore the next day if she overexerts herself and "won't get up until… 1:00 or 1:30."  *Id.*  She mentioned that even with medication, she will "pay for it in the end" if she "[does] too much."  AR 62-63.  Cooking also exacerbates Walker's arthritis, especially when she has to "[chop] hamburger meat" or drain the skillet for spaghetti.  AR 63. Walker also testified that she has difficulty sitting and walking for extended periods due to her arthritis and breathing problems. AR 64.  She said she can only be on her feet for "about an hour" before having to sit down and rest for "about an hour and a half."  *Id.*  She stated that she would not be able to cook for more than two hours at a time and that she needs help carrying things.  *Id.*

The ALJ then accepted testimony from vocational expert Lynda Berkley.  AR 66-68.  He asked Berkley what work would be available to "a hypothetical younger individual with a limited education and no past work" who is "limited to light work… with occasional stooping, kneeling, crouching, crawling and stair climbing" and "no exposure to unprotected heights."  AR 66.  Berkley testified that Walker could do light work as a cleaner or small products assembler, for which there are 800,000 and 100,000 jobs in the national economy, respectively.  AR 67-68.

## C.  Walker's Additional Testimony About Activities

Walker made multiple statements to her examiners about the effects of her medication and

physical symptoms on her daily activities.  In a 2009 Function Report, Walker stated that she cooks every day but takes a long time to do other chores due to her pain.  AR 346-51.  She also had trouble standing, reaching, and kneeling.  In November 2009, Walker told Rana that she was experiencing pain in her left knee, but the report indicated that she was "able to do her day to day activities without any problem."  AR 455.  In January 2011, Walker told Rana that her hands and right knee were "very swollen and painful" and that she was taking Motrin and Aleve to help cope with the pain.  AR 476.  In March 2012, Walker submitted another Function Report stating that her joint pain made it hard for her to "dress," "carr[y] bags from [the] supermarket," and perform postural activities such as lifting, bending, kneeling, and walking. AR 391-98.  She also said that "medicine helps somewhat."  *Id.* at 391.  In April 2012, Walker complained to Brimmer of pain and swelling in her "hands, knees and feet," which limited her ability to stand, walk, and lift.  AR 648-49.  Brimmer's report indicated that Walker "can dress herself and perform her own hygiene," "cook," and "do her dishes, mopping, vacuuming and laundry, as long as she takes her medications." *Id.*  In December 2012, Walker told Rana that she can only do "minimal chores around the house" due to joint pain.  AR 668.

In March 2012, Walker's daughter Alicia Taylor submitted a Third Party Function Report that echoed Walker's statements from the same period.  AR 399-406. Taylor stated that Walker cannot carry anything and sometimes needs help dressing and getting up from the toilet and bathtub.  *Id*. at 399-400.  She also stated that Walker cooks "weekly," goes out twice a week, and shops twice a month.  *Id*. at 401-2.  However, Taylor states that Walker cannot go out alone because she "can[not] walk far" or carry bags.  *Id*. at 402.  Taylor listed the same limitations as Walker regarding her ability to lift, bend, squat, climb stairs, and perform other postural activities. *Id*. at 406.

### D. ALJ Decision

At step one, the ALJ determined that Walker had not engaged in substantial gainful activity since November 15, 2011, the date of application.  AR 30.  At step two, the ALJ found that Walker has a severe impairment in the form of rheumatoid arthritis.  *Id*.  He also determined that Walker's "medically determinable mental impairment of depression and substance abuse,

considered singly and in combination, do not cause more than minimal limitation in her ability to perform basic mental work activities and are thus nonsevere." AR 32. In reaching this conclusion, the ALJ accorded little weight to examining psychologist Thomsen[3] and great weight to state agency examining psychologist Van Gaasbeek.[4] AR 33.[5]

The ALJ concluded that Thomsen's opinions relied too heavily on Walker's subjective complaints, were internally inconsistent, and conflicted with Walker's own statements regarding her social functioning. *Id.* The ALJ believed that "bereavement played an important role in Dr. Thomsen's estimated limitations," due to the death of Walker's son a few months before. *Id.* In contrast, the ALJ found that Van Gaasbeek's opinion was "reasonable and consistent with the record as a whole," including findings of intact mental functioning, improving depression, and Walker's reports that she could perform a wide range of daily activities. *Id.* At step three, the ALJ found that Walker's physical impairment does not meet or medically equal the criteria of any medical listing in 20 C.F.R. Part 404. AR 34.

At step four, the ALJ found that Walker has the RFC to perform light work, but is limited in her ability to balance, stoop, kneel, crouch, crawl, and climb stairs; she must also avoid working at unprotected heights. AR 34. In reaching this conclusion, the ALJ accorded great weight to state agency non-examining physicians Morgan and Gilpeer, as well as state agency examining physician Brimmer. AR 38. He found that the opinions of Gilpeer and Morgan are "reasonable and consistent with the medical evidence of record as a whole," including Walker's reportedly

---

[3] On January 13, 2012, Thomsen diagnosed Walker with major depressive disorder, bereavement, and cocaine dependence in early full remission. AR 642-43. She stated that Walker's "social isolation and alienation would make working effectively with others difficult." AR 642.

[4] On May 20, 2012, Van Gaasbeek diagnosed Walker with adjustment disorder with depressed mood, bereavement, and cocaine dependence in remission. AR 656. He stated that Walker's depression was treatable and that she was likely to "fully recover, even without treatment." AR 656-57.

[5] In January 2013, state agency psychiatric consultant Caruso-Radin reviewed prior psychiatric reports, including Thomsen's, and found that "the evidence as a whole indicates that the prior decision" finding Walker not disabled as a result of mental impairments "was reasonable and based on the available MER." AR 104. The ALJ accorded "great weight" to Caruso-Radin because she was a "highly qualified" expert whose opinion was consistent with Van Gasbeek's and the record as a whole. AR 34.

United States District Court
Northern District of California

1    managed pain on Tylenol and Prednisone, her largely unremarkable physical examinations, and

2    her improvement with Methotrexate.  *Id*.  He found that Brimmer's opinion is also "reasonable

3    and consistent with the medical evidence of record as a whole" for the same reasons as the Gilpeer

4    and Morgan opinions.  AR 38.

5         The ALJ accorded some weight to the January 2011 and December 2012 opinions of Rana,

6    a state agency examining physician, because they are "generally consistent with the opinion of Dr.

7    Brimmer and the medical evidence of record as a whole."  AR 39.  However, "in viewing the

8    claimant's subjective pain allegations in a light most favorable to her," the ALJ "included further

9    restrictions" on Walker's exertional, postural, and environmental limitations beyond those

10   suggested by Rana.  *Id*.[6]  The ALJ accorded little weight to the February 2013 opinion of

11   Manashil because it is "inconsistent with the medical evidence of record as a whole, and with the

12   claimant's own reports regarding her functional abilities," because it "appears to be based

13   primarily on the claimant's subjective complaints," and because it "predates the claimant's use of

14   Methotrexate."  AR 39.  The ALJ also discounted Manashil's opinion because she "is not an

15   acceptable medical source."  *Id*.

16        Lastly, the ALJ found that Walker's own statements about the severity of her symptoms

17   were "not entirely credible."  *Id*.  He pointed out that Walker said she "loves" Methotrexate and

18   told her rheumatologist that it significantly helped her symptoms, yet "testified that she continues

19   to experience significant symptoms."  *Id*.  He found that her statements were inconsistent with her

20   "unremarkable" physician examinations.  *Id*.  The ALJ also concluded that Walker misrepresented

21   her cocaine use and "provided no explanation for her significant self-employment earnings in

22   2011" both of which further called into question the reliability of her testimony.  *Id*.

23        At step five, the ALJ considered Walker's age, education, work history, and RFC and

24   found that there are jobs that exist in significant numbers in the national economy that Walker can

25   perform, such as "cleaner" and "small products assembler."  AR 40-41.  As a result, he concluded

26

27   ───────────────

28   [6] The ALJ accorded little weight to the November 2009 opinion of Rana because it was "rendered prior to the onset of the claimant's rheumatoid arthritis, and thus does not adequately consider the effect of this impairment on the claimant's functional limitations."  *Id*.

United States District Court
Northern District of California

1   that Walker was "not disabled." *Id*. at 41.

2                                    **LEGAL STANDARD**

3          A district court reviews the ALJ's decision to determine whether the ALJ's findings are

4   supported by substantial evidence and free of legal error.  42 U.S.C. § 405(g); *Fair v. Bowen*, 885

5   F.2d 597, 601 (9th Cir. 1989).  Substantial evidence means "'more than a mere scintilla,' but less

6   than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 521-22 (9th Cir. 1996) (internal quotations

7   and citations omitted).  This "means such relevant evidence as a reasonable mind might accept as

8   adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal

9   quotations and citations omitted).   A court must review the record as a whole and consider

10  adverse as well as supporting evidence. *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir.

11  2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision

12  must be upheld. *Id*.  "In Social Security cases the ALJ has a special duty to fully and fairly

13  develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*,

14  713 F.2d 441, 443 (9th Cir. 1983).  Reversal is not warranted if the legal error is "inconsequential

15  to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir.

16  2012) (internal quotations omitted).

17                                    **DISCUSSION**

18         Walker contests the ALJ's findings at step two (that Walker does not suffer from a severe,

19  medically determinable mental impairment) and at step four (that Walker has the RFC to perform

20  light work with certain postural and environmental limitations).  She alleges that in reaching his

21  decision, the ALJ: (1) improperly discredited the opinions of Thomsen and Manashil in favor of

22  state agency examiners and consultants; and (2) improperly discredited Walker's own statements

23  about the severity of her symptoms.  Walker also argues that the ALJ improperly rejected

24  Walker's objections to admitting the January 2011 and December 2012 Rana opinions and

25  impermissibly reopened her prior claims by considering Rana's opinions secured before

26  November 2011, when she filed the application at issue.

27  **I.   THE ALJ'S TREATMENT OF THE OPINION OF TREATING SOURCE MANASHIL**

28         The ALJ gave four reasons for according "little weight" to Manashil's medical opinion: (i)

                                          12

it is inconsistent with the medical evidence and Walker's own reports as to her functional abilities; (ii) is based primarily on Walker's subjective complaints; (iii) it predates Walker's use of Methotrexate and so could not have considered the effects of the medication on her symptoms; and (iv) Manashil is not an acceptable medical source. AR 39. Walker argues that the ALJ erred in discounting Manashil's opinion because: (i) Social Security regulations declare that opinions from non-acceptable medical sources are "important" and require them be evaluated; (ii) there is no evidence that Manashil's opinion was based primarily on Walker's subjective complaints; (iii) the ALJ exaggerated Walker's statements about her functional capacity, and Walker's actual testimony about her functional capacity do not conflict with Manashil's opinion; and (iv) the ALJ cannot prove that Manashil did not account for the future use of Methotrexate on Walker's symptoms. MSJ at 8-12.

Social Security regulations require consideration of opinions on the severity of symptoms from non-acceptable medical sources such as nurse practitioners who work on their own, like Manashil. MSJ at 8-9.[7] While "[a]cceptable medical sources" are used to establish the existence of a medically determinable impairment, 20 C.F.R. § 404.1513(a), "other sources" like Manashil may be used to show the severity of impairment. 20 C.F.R. § 404.1513(d). An ALJ may discount the opinion of an "other source" in favor of conflicting testimony from additional sources by giving reasons germane to that witness. *Molina*, 674 F.3d at 1111.

Here, Walker is using Manashil's opinion to show the severity of her arthritic symptoms, not to establish the existence of arthritis. Walker had already been diagnosed with rheumatoid arthritis in October 2010 when she was hospitalized with pneumonia, and the ALJ had already determined that it was a medically "severe" impairment. AR 30. Therefore, the ALJ was required to consider Manashil's "other source" opinion in determining the severity of Walker's symptoms. The question is whether the ALJ had "germane" reasons to discount Manashil's opinion in favor

---

[7] A nurse practitioner can be an "acceptable medical source" if she works closely with a doctor. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (holding that a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source); *see also Taylor v. Commissioner of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th. Cir. 2011); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). A nurse practitioner working primarily on her own is an "other source." *Id.* Walker does not dispute that Manashil is an "other" source.

United States District Court
Northern District of California

1   of conflicting opinions from others as to the severity of the condition and any resulting limitations.

2         Walker is correct that the ALJ erred in describing Manashil's opinion as based primarily

3   on Walker's subjective complaints rather than clinical or objective medical findings.  Manashil

4   reported that she relied on her physical exam of Walker's joints and related observations.  AR

5   681-82.  The Commissioner contends that Manashil must be relying on subjective complaints

6   because there is little objective evidence in the record to support her findings.  Cross-Mot. at 5-6.

7   But Manashil's report was based on a physical exam (or more likely series of physical exams, as

8   Manashil had been treating Walker for a number of years), much like those administered by state

9   agency physicians Rana and Brimmer. AR 681-83.  Like Rana and Brimmer, Manashil first set out

10  Walker's chief complaints and then offered findings on Walker's ability to sit, stand, lift, carry,

11  and perform other postural maneuvers.  *Id*.  Also like the state agency physicians, Manashil did

12  not specify what tests were administered to support her findings, only that they were based on a

13  "physical examination." AR 681 ("To determine your patient's ability to do work-related activities

14  on a continuous full time basis in a competitive work settings, please give your opinion—based on

15  your examination—of how your patient's physical capabilities are affected by the impairment(s)."

16  (internal formatting omitted)).  Nothing in Manashil's opinion indicates that it was based on

17  subjective complaints any more than the state agency exams were.  Thus, the ALJ's finding that

18  Manashil primarily relied on subjective complaints does not constitute "germane" reasoning under

19  *Molina*.

20        I also agree with Walker that her statements about her functional capacity do not conflict

21  with Manashil's opinion.  MSJ at 11-12.  The ALJ claimed that Walker's reports of her daily

22  activities such as cooking, cleaning, and looking after grandchildren "sugges[t] far greater

23  functioning than Ms. NP Manashil's assessment." AR 39.  The Commissioner also points to

24  various statements made by Walker that she can cook, clean, and do other household chores as

25  long she takes her medications.  Cross-Mot. at 8.  But, the ALJ and Commissioner completely

26  ignore Walker's other statements about her continuing pain despite taking medication as the result

27  of these activities, as well as her testimony that she only infrequently engages in these activities.

28  Even the Commissioner notes that Walker "pay[s] for it" after doing her chores despite taking

14

medication.  *Id*.

Brimmer stated that Walker can "dress herself," "perform her own hygiene," "cook," and do other chores "as long as she takes her medication," AR 648-49, but she did not state how often Walker can do these activities.  Conversely, Walker stated in a 2012 Function Report that despite taking Prednisone, her "joints are [still] very painful" and "[her] daughter does most" of the chores.  AR 391-92, 398.  Additionally, she reported trouble dressing, carrying bags, and performing postural maneuvers.  AR 391, 396.  Even after taking Methotrexate, Walker testified that she still has difficulty sitting, standing, lifting, and doing household chores.  AR 58-64.  She also testified that she can only stand for "[a]bout an hour" and that she only does chores, besides cooking, about once per week due to her symptoms.  AR 62, 64.  Further, activities like "chopping up [] meat" and "pulling [] clothes out of the washing machine" cause her hands to swell.  AR 60.  Similarly, Manashil's pre-Methotrexate report found that Walker can only perform certain postures (*e.g.*, sitting, standing, lifting, and carrying) for less than three hours at a time, and that she has difficulty manipulating objects.  AR 681-82.  Walker's statements, when viewed as a whole, do not conflict with Manashil's findings of a reduced functional capacity.

That said, the ALJ *did* give germane reasons for discounting Manashil's opinion. Critically, the ALJ and Commissioner point out that nothing in the record supports the level of limitation found by Manashil.  Both Brimmer and Rana found mild tenderness and swelling but largely unremarkable results.  Brimmer found no "significant redness, deformities, swelling or crepitus of the joints of [Walker's] hands" or knees, but noted some "mild crepitus" in her left knee.  AR 651.  Brimmer concluded that Walker could stand and walk for 6 hours, lift 20 pounds occasionally and 10 pounds frequently, perform most postural activities, and manipulate without limitations.  AR 651-62.  Rana found that Walker had mild tenderness in her interphalangeal joints and knees, limited range of motion in her left knee, and a mild limp.  AR 669.  Rana concluded that Walker could stand and walk for 6 hours, carry 50 pounds occasionally and 25 pounds frequently, and perform most postural activities.  AR 670.  Further, the Highland Hospital records from June 2012 to October 2013 found only "mild effusion" in the right knee and ankle (AR 38, 699) and later "no joint swelling… [or] tenderness."  AR 700.  Because there is little in the record

United States District Court
Northern District of California

1  to support Manashil's finding of a drastically reduced functioning capacity, the ALJ had a

2  germane reason for discounting her opinion.

3          I also disagree with Walker's contention that Manashil's opinion "may have" accounted

4  for the future use of Methotrexate.  MSJ at 12.  Walker argues that the ALJ "has no idea if

5  Manashil factored the effects of methotrexate into her opinion of Ms. Walker's conditions and

6  limitations."  *Id*.  She also alleges that under *DeLorme v. Sullivan*, 924 F.2d 841 (9th Cir. 1991)

7  the ALJ has a duty to "develop the record" and "conduct an appropriate inquiry" into whether

8  Manashil considered the possible effects of future medication.  *Id*. at 849 (holding that "[t]he ALJ

9  has a duty to develop the record… even when the claimant is represented by counsel"); *see also*

10  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (holding that the ALJ has a duty to conduct

11  an appropriate inquiry by asking further questions of physicians when necessary).

12          Walker's arguments are without merit.  I agree with the Commissioner that Manashil's

13  exam evaluated Walker's then-present physical health and that no part of the opinion suggests the

14  nurse considered the effects of Methotrexate.  Neither of the cases Walker relies on can be read to

15  impose a duty on an ALJ to seek out a revised medical opinion from a claimant's treating

16  practitioner where the claimant was prescribed a new medication after the date of that

17  practitioner's opinion, especially where there is other evidence (including claimant's own

18  testimony) regarding the impact of the new medication on the claimant's symptoms.[8]  In light of

19  the nature of Manashil's report, it is illogical to assume that Manashil considered the future effects

20  of Methotrexate and unreasonable to expect the ALJ to conduct a further inquiry. The ALJ

21  appropriately discounted Manashil's opinion based on the additionally germane reason that it was

22  _____

23  [8] In *DeLorme*, the Ninth Circuit explained that because of the non-adversarial nature of ALJ
    hearings, where "medical evidence is not definite concerning the onset date and medical

24  inferences need to be made," Social Security regulations "require[] the administrative law judge to
    call upon the services of a medical advisor and to obtain all evidence which is available to make

25  the determination."  924 F.2d at 848.  This duty, as well as the duty to gather all relevant medical
    records, is "especially important" in cases of mental impairments where claimants may not be able

26  to protect themselves by furnishing all relevant records.  *Id*. at 848-49.  In *Smolen*, the ALJ could
    not discount a physician's opinions simply because they were given in a "yes-or-no" and "check-

27  the-box" format.  80 F.3d at 1288.  As the court explained:  "If the ALJ thought he needed to
    know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an

28  appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to
    them."  *Id*.  The situation here is starkly different.

written before Walker started on Methotrexate, which helped her symptoms of rheumatoid arthritis.

Despite mistakes in the ALJ's analysis, the inconsistency of Manashil's opinion with the record as a whole and its failure to account for the use of Methotrexate are sufficiently germane to discount her "other source" opinion. *See Molina*, 674 F.3d at 1111 (the ALJ may discount "other source" testimony if the ALJ "gives reasons germane to each witness for doing so." (internal quotations and citations omitted)). The ALJ did not err in according little weight to Manashil's opinion.

## II. THE ALJ DID NOT ERR IN ADMITTING THE 2011 AND 2012 RANA OPINIONS

Rana, a state agency examining physician, completed physical evaluations of Walker in 2009, 2011, and 2012. AR 455-59, 476-79, 668-71. After these examinations took place, but at the start of the ALJ hearing, Walker objected to including in the record the January 2011 and December 2012 evaluation under 20 C.F.R. § 416.919j because those examinations were conducted for Walker's prior applications and resulted in adverse disability determinations. AR 51-53. Her attorney admitted that there was no evidence that Rana was biased or otherwise had an adverse interest to Walker but argued that because Walker was not told beforehand who the examiner would be, she did not have the opportunity to object to Rana. *Id.*. The ALJ refused to exclude those reports because: (i) Walker had the right to object to having a third examination by Rana in connection with her most recent application (given the two prior adverse opinions from Rana) but waived it when she failed to object and went ahead with the examination; and (ii) Walker offered no evidence that Rana was biased or prejudiced against her. AR 52-53; 35.

Walker argues that the ALJ should have sustained the objections. The regulation at issue provides:

> You or your representative may object to your being examined by a medical source we have designated to perform a consultative examination. If there is a good reason for the objection, we will schedule the examination with another medical source. A good reason may be that the medical source we designated had previously represented an interest adverse to you. . . . Other things we will consider include: . . . whether the medical source had examined you in connection with a previous disability determination or decision that was unfavorable to you. . . . . To avoid a delay in processing

1

> your claim, the consultative examination in your case will be changed to another medical source while a review is being conducted.

2

3    20 C.F.R. § 416.919j; *see also* POMS DI 22510.010(F)(2) (SSA internal guidelines provide that

4    where a claimant objects to a CE, the agency should provide another CE where there is good

5    cause, including where "[t]he CE source examined the claimant in connection with a previous

6    disability determination or decision that was unfavorable to the claimant.").[9]

7         Comments to the regulation indicate that failure to raise objections at the time of the

8    consultative examination does not waive objections at the reconsideration or administrative law

9    stage. 56 FR 36932-01 at 36948-49. Further, the agency is supposed to give "reasonable notice"

10   of the particulars of an examination, including the "the name of person or facility who will do it."

11   20 C.F.R. § 416.917. Despite this, the SSA failed to notify Walker that the examiner on her most

12   recent claim would be Rana. In response to the attorney's statement that "[t]here's no way for

13   [Walker] to know who she's getting examined by until she shows up there," the ALJ agreed,

14   responding, "Okay, [that's] fair." AR 52.

15        Taken together, these authorities indicate that in the normal course, claimants may object

16   to a particular CE for good cause, but do not waive any subsequent objections if, for example, they

17   did not know the name of the CE in advance. The question becomes whether the ALJ was

18   required to exclude the 2011 and 2012 Rana opinions based on the objection at the hearing.

19   Neither side presents any authority on this issue.

20        The ALJ did not exclude the challenged Rana reports in part because there was no

21   allegation by claimant that Rana was biased or otherwise had an adverse interest to Walker. His

22   decision is consistent with an unpublished decision from the Ninth Circuit. In *Korenica v. Astrue*,

23   346 F.App'x 141, 142 (9th Cir. 2009), the court acknowledged that when a claimant objects to

24   being examined by a medical source, the ALJ may reschedule the exam with a different source

25

26   ───────────────

27   [9] The Commissioner argues that POMS only applies to pre-examination objections and, in any event, does not have the force of law. Cross-Mot. at 12-13. *See Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ") (internal citation omitted); *Campbell v. Astrue*, 2011 WL 1459168 (E.D. Cal. April 15, 2011) ("The Ninth Circuit has expressly stated that HALLEX and POMS do not impose judicially enforceable duties on either the ALJ or the courts." (internal quotations and citations omitted)).

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

without first determining whether good cause exists under 20 C.F.R. § 416.919j.  But the court also held that the regulation does not require "the ALJ to ignore the results of the first medical source's examination," and noted the claimant did not argue that any bias or adverse interest "affected [the] evaluation or prejudiced her in any way."  *Id*. at *1.[10]

In absence of other authority, I conclude that the ALJ did not err in failing to exclude the Rana reports, absent evidence by claimant that Rana was biased or had an adverse interest to Walker.  I consider whether the ALJ erred in according Rana's 2012 report "some weight" in section IV of the Order, below.

### III. THE ALJ'S TREATMENT OF THE OPINIONS OF PSYCHIATRIC EXAMINERS THOMSEN AND VAN GAASBEEK

The ALJ must provide "specific and legitimate" reasons for rejecting the opinion of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) ("[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." (internal citation omitted)).  In his decision, the ALJ accorded "little weight" to Thomsen's January 2012 opinion because: (i) Thomsen relied heavily on Walker's subjective complaints; (ii) her report of Walker's social functioning is internally inconsistent and conflicts with Walker's own statements; and (iii) her report was prepared only six months after the death of Walker's son.  AR 33.  Walker responds by citing CFR § 416.927(c)(3), which requires the ALJ to give more weight to opinions that are supported by "medical signs and laboratory findings," such as the tests administered by Thomsen. MSJ at 16-17.

I find that the ALJ has offered "specific and legitimate" reasons for discounting Thomsen's opinion.  First, it was not unreasonable for the ALJ to conclude that Thomsen relied heavily on

---

[10] In one of the only other decisions addressing 20 C.F.R. § 419.919j, a district court excluded the opinion of a doctor who participated as an "impartial expert witness" at the ALJ hearing when that same doctor had previously rendered an opinion that the claimant was not disabled on a prior application.  *Bergstad v. Comm'r of Soc. Sec. Admin*., 967 F. Supp. 1195, 1204 (D. Or. 1997).  The participation of the doctor at the hearing raised an implication of bias, not only because of his prior adverse determination, but also because the doctor mistakenly understood he was to consider the evidence from the prior examination, as opposed to only evidence relevant to the most recent disability application.  *Id*. at n.3.

Walker's subjective complaints despite the numerous tests he performed.  Walker contends that

the tests lend credence to Thomsen's opinion under 20 C.F.R. § 416.927, which states that medical

opinions are entitled to more weight when they are supported by laboratory findings and

explanations.  While Thomsen performed many tests, the results of those tests were mixed and

indicated *both* minimal and severe depression.  AR 638.  Thomsen explained this discrepancy is

due to alexithymia, "a deficiency in the ability to identify and express emotions," but offers no

objective evidence to support that finding.[11]  *Id.*  As a result, it was not unreasonable for the ALJ

to conclude that the degree of social limitation found by Thomsen was based primarily on

subjective complaints, or at least not supported by substantial objective evidence.

Moreover, the ALJ noted that Thomsen's report was internally inconsistent because it

found that Walker "had moderate limitations in responding appropriately to the public and

supervisors, yet inexplicably concluded that the claimant was markedly limited in her ability to get

along with others."  AR 33, 646.  Such discrepancies raise doubts as to the reliability of

Thomsen's opinion.  Thomsen's findings also conflict with Walker's March 2012 Function Report

stating that she "had no problem getting along with others and enjoyed spending time with

family."  AR 33, 396.  However, Walker also stated in that report that she was "very stressed."

AR 397.  Because the report is subject to more than one rational interpretation, the ALJ's finding

that it conflicts with Thomsen's opinion must be upheld.  *See Robbins*, 466 F.3d at 882.

Further, the ALJ properly concluded that Thomsen's opinion is entitled to less weight than

Van Gaasbeek's because the timing of Thomsen's report makes it less relevant.  AR 33.  The ALJ

states that "[t]o the extent that I give Dr. Thomsen's opinion any weight, I note that this report was

prepared six months after the claimant's son was tragically murdered… It appears, based on

psychological CE Dr. Van Gaasbeek's report that the claimant had improved significantly by May

---

[11] Walker argues that "[i]nsofar as the ALJ alleges inconsistencies or ambiguities in Dr.
Thomsen's report, the ALJ could have recontacted Dr. Thomsen for clarification."  MSJ at 17.  I
disagree.  The ALJ has no duty under *Delorme* or *Smolen* to conduct a further inquiry into
Thomsen's detailed opinion.  *See Delorme*, 924 F.2d at 848 (ALJ must conduct further inquiry
where "medical evidence is not definite concerning the onset date and medical inferences need to
be made"); *see also Smolen*, 80 F.3d at 1288 (ALJ could not discount a physician's opinion simply
because they were given in a "yes-or-no" and "check-the-box" format).

United States District Court
Northern District of California

2012." *Id.*  The Commissioner adds, "Dr. Thomsen's evaluation was conducted at a particularly difficult time in Plaintiff's life, and does not represent her usual level of functioning throughout the adjudicatory period."  Cross-Mot. at 18-19.  While the timing of Thomsen's report does not speak to its credibility, it does speak to its continuing relevance.  In determining relevance, it is reasonable to consider the psychological evidence of record as a whole, including Van Gaasbeek's May 2012 report that found that Walker had improved and would recover fully from her depression.[12]  *See Robbins*, 466 F.3d at 882 (holding that a court must review the record as a whole and not simply isolate a "specific quantum of supporting evidence" (internal citation omitted)).  As a result, I find that the ALJ provided specific and legitimate reasons for according more weight to Van Gaasbeek than to Thomsen.

## IV. THE ALJ'S TREATMENT OF THE OPINIONS OF STATE AGENCY EXAMINING- AND NON-EXAMINING PHYSICIANS

The ALJ must evaluate and assign weight to all medical opinions. 20 C.F.R. § 416.927(c). In determining the proper weight to assign, the ALJ must consider: (1) examining relationship (examining opinions are given more weight than nonexamining opinions); (2) treatment relationship (including the length and nature of the relationship); (3) supportability (how much evidence or explanation a medical source provides for his opinion); (4) consistency (how consistent the opinion is with the record as a whole); and (5) specialization.  *Id.*

### A.  Examining Physicians Drs. Brimmer and Rana

The ALJ accorded great weight to the April 17, 2012 opinion of Dr. Brimmer, a state agency examining physician, because it was "consistent with the record as a whole," including: (i) "notes documenting [Walker's] reportedly managed pain on Tylenol and Prednisone;" (ii) "[Walker's] later statement regarding her non-compliance with Prednisone;" (iii) her statements that Methotrexate significantly improved her symptoms; and (iv) the opinion's "largely unremarkable physical examinations."  AR 38.  He accorded some weight to the January 2011 and

---

[12] In January 2013, non-examining state agency consultant Caruso-Radin also found that Walker did not suffer from a disabling mental impairment based on her review of Thomsen's opinion.  AR 104.

United States District Court
Northern District of California

December 2012 opinions of Dr. Rana, a state agency examining physician, because they were "generally consistent with the opinion of Dr. Brimmer and with the medical evidence of record as a whole." AR 39. However, he also stated that he would "accommodate the claimant's subjective allegations of pain" and "includ[e] further restrictions on the claimant's exertional, postural, and environmental limitations." *Id.*

Walker argues that the weight given to Rana and Brimmer was inappropriate because: (1) they relied on less information and the same clinical findings as Manashil, so their opinions are not entitled to greater deference; and (2) unlike Manashil's opinion, the Rana and Brimmer opinions are based on one-time exams rather than an ongoing treatment relationship. MSJ at 14-15.

I find that the ALJ did not err in weighing the opinions of Rana and Brimmer. First, Walker argues that treating sources are entitled to more weight compared to examining sources because treating sources have a more holistic picture of the claimant's ailments. *See* 20 C.F.R. 416.927(c)(2) (requiring the ALJ to give more weight to treating sources who are better able to provide a more "detailed, longitudinal picture of [the claimant's] medical impairment(s)."); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) ("When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"). However, as established above, Manashil is an "other source" so any argument that relies on her status as a treating source is unpersuasive. *See supra* Discussion Section I. "Other source" opinions may serve as substantial evidence when they are consistent with independent findings and other medical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). But as discussed previously, the ALJ had germane reasons for discounting Manashil's opinion because they lack support from both the Highland Hospital records and the state agency findings.

Second, the ALJ did not err in according more weight to Rana and Brimmer despite their shorter treatment relationships with Walker. The length of the treatment relationship is only one factor that the ALJ must consider in weighing a medical opinion. 20 C.F.R. § 416.927(c). "Supportability" and "consistency" are also factors, and as the Commissioner correctly notes, the

United States District Court
Northern District of California

ALJ properly found that Brimmer's opinion was supported by and consistent with the medical record as a whole.  Cross-Mot. at 14-15.  The ALJ pointed to specific Highland Hospital records from February to October 2013 that indicate that Walker was experiencing mild joint swelling but felt "significantly better" after starting Methotrexate.  AR 38, 695, 699.  Walker has also stated that Methotrexate improved her symptoms.  AR 58.  Similarly, Brimmer found that Walker had "some mild crepitus" in her left knee but no "significant redness, deformities, swelling or crepitus" in her other joints.  AR 651.

In 2011 and 2012, Rana also found mild tenderness in Walker's knees and interphalangeal joints, but no significant swelling.  AR 477, 699.  As the Commissioner points out, consistency with the record as a whole, including Brimmer's opinion, is a valid reason to accord weight to an opinion.  Cross-Mot. at 20; 20 C.F.R. § 416.927(c)(4).  The ALJ's decision was also reasonable in light of the fact that he only accorded "some weight" to Rana and included restrictions above and beyond those suggested by Rana on Walker's exertional, postural, and environmental limitations.  AR 39.  Finally, even if the ALJ committed legal error in weighing the Rana and Brimmer opinions – which I do not find occurred – reversal is not warranted if the error is "inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115.  Here, the only evidence showing anything more than mild tenderness and swelling is Manashil's report that the ALJ had germane reasons for discounting.  Accordingly, I find that the ALJ's treatment of the Rana and Brimmer opinions was proper and not a basis for remand.

**B.  Non-Examining Physicians Drs. Gilpeer and Morgan**

Drs. Gilpeer and Morgan are state agency non-examining physicians who completed reports in February 2011, June 2012, and January 2013.  They found that Walker had the RFC to do the full range of light work based on a review of the medical records.  The ALJ gave great weight to their opinions after finding that: (i) Gilpeer and Morgan are highly qualified experts in the evaluation of disability claims; and (ii) their opinions are "reasonable and consistent with the… record as a whole," including notes documenting Walker's reportedly managed pain on Tylenol and Prednisone, Walker's statement about her non-compliance with Prednisone, her statements that "Methotrexate significantly improved her symptoms," and the largely

unremarkable physical examinations.  AR 38.

In response, Walker argues that: (i) improved symptoms do not mean she can functionally normally in a workplace; (ii) the ALJ fails to explain how Prednisone and non-compliance with Prednisone supports the opinions; (iii) the ALJ's assertion of "largely unremarkable" examination results is not supported by other evidence indicating pain and swelling; (iv) the Gilpeer and Morgan opinions predate most of the recent medical records including that of Manashil; and (v) the opinions should be discounted to the extent that they are based on the 2011 and 2012 Rana opinions.  MSJ at 15-16.

The opinions of non-examining physicians may "serve as substantial evidence when [they] are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.  "Because nonexamining sources have no examining or treating relationship with [the claimant], the weight [given to them] will depend on the degree to which they provide supporting explanations for their opinions," taking into account the "opinions of treating and other examining sources" and other "pertinent evidence."  20 C.F.R. 416.927(c)(3).

First, Walker argues that the ALJ failed to explain how simply noting Walker's improved symptoms on medication entitles Gilpeer and Morgan to great weight.  MSJ at 15.  Walker has testified that she continues to experience symptoms, and partial improvement does not necessarily mean full functionality.  *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").  It is true that "the ALJ has failed to articulate exactly how… the single note of noncompliance on prednisone supports the non-examining state agency opinion[s]."  MSJ at 15.  But this failure is not material to my decision.  As discussed earlier, Walker has admitted that Methotrexate helped reduce her symptoms.  AR 58.  Gilpeer and Morgan's acknowledgement of this improvement is consistent with the record and a valid basis for giving weight to those opinions.

Second, Walker argues that Gilpeer and Morgan's affirmation of the "largely unremarkable" examination results is not supported by the record.  MSJ 15-16.  However, the only

24

United States District Court
Northern District of California

evidence showing anything more than mild tenderness or swelling is Manashil's report.  All other records, including those from Rana, Brimmer, and Highland Hospital, have found no significant swelling.  It was logical for the ALJ to find that the Gilpeer and Morgan opinions are consistent with the record as a whole.

Third, Walker contends that the Gilpeer and Morgan opinions predate some potentially contradictory evidence, specifically the Manashil opinion and more recent treating records.  MSJ at 16.  But this argument is not persuasive because the ALJ had legitimate reasons for discounting Manashil's opinion, and plaintiff does not show how the "more recent treating records" contradict the examiners' conclusions such that the ALJ was required to address the contradiction before relying on the examiners' opinions.

Last, Walker argues that the Gilpeer and Morgan opinions should be discounted to the extent that they are based on the 2011 and 2012 Rana opinions.  MSJ at 16.  As established above, the ALJ was within his discretion to overrule the objections to the Rana opinions and was able to consider them.  Because the ALJ was able to consider them, so were Gilpeer and Morgan.  And as is the case with Rana and Brimmer, any error that the ALJ committed in weighing the Gilpeer and Morgan opinions does not require remand because that error is "inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115.  The only affirmative evidence that supports Walker's claims of disabling rheumatoid arthritis and depression are the opinions of Manashil and Thomsen, which the ALJ properly accorded "little weight."  Therefore, I find that the ALJ's treatment of the Gilpeer and Morgan opinions is not a basis for remand.

## V.  THE ALJ'S CREDIBILITY DETERMINATION

An ALJ must provide "clear and convincing" reasons to discount a claimant's allegations regarding intensity of pain and other limitations.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Chaudry v. Astrue*, 688 F.3d 661, 670-71 (9th Cir. 2012); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).  Credibility findings must be supported by the record and be sufficiently specific to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony.  *Thomas*, 278 F.3d at 958 (citation omitted).

25

1      The ALJ gave four main reasons for finding that Walker was "not entirely credible": (i)

2  she had unreported earnings of $10,436.00 in 2011; (ii) she misrepresented her cocaine use; (iii)

3  she gave conflicting accounts of her functional capabilities; and (iv) her statements are

4  inconsistent with the largely unremarkable physical examinations.  AR 39.  The ALJ's conclusions

5  regarding Walker's alleged unreported earnings, conflicting accounts as to her functional

6  capabilities, and inconsistency with the record are not "clear and convincing" reasons to discredit

7  her.  However, the ALJ did not err in finding that Walker was "not entirely credible" based on her

8  inconsistent statements about cocaine use.

9      First, the unreported earnings are not a "clear and convincing" reason to discount Walker's

10  credibility.  The ALJ stated that Walker "testified that she has never worked before… but provided

11  no explanation for her significant self-employment earnings in 2011, further calling into question

12  the reliability of her testimony."  AR 39.  The ALJ used the record of self-employment earnings as

13  a basis to undermine her credibility as a whole.  However, as Walker points out, the ALJ never

14  asked Walker about these earnings or otherwise brought them to her attention so she could address

15  them.  MSJ at 17-18.  Walker argues the failure of the ALJ to do so violates 20 C.F.R. § 416.1444,

16  which specifies that the "the administrative law judge looks fully into the issues, questions you

17  and the other witnesses, and accepts as evidence any documents that are material to the issues."

18  *See also* HALLEX I-2-6-56 Adducing the Evidence ("When evidence is received, the ALJ must

19  decide whether to admit it into the record as an exhibit, and the ALJ must also resolve any

20  conflicts in the evidence.").  She notes that once she learned about the ALJ's reliance on the

21  purported 2011 self-employment earnings, she attempted to correct the record.  AR 298, 440-441

22  (informing the Appeal's Council that the earnings were a mistake and likely the result of someone

23  stealing her social security number).  In reply, the Commissioner does not address this argument,

24  but asserts the remaining reasons identified by the ALJ are sufficient.  Cross-Mot. at 24 n.3.  I

25  conclude that because the ALJ did not question Walker about these earnings, their purported

26  existence is a not a clear and convincing reason supported by the record to discount Walker's

27  credibility.

28      Second, the ALJ's claim that Walker gave conflicting reports of her functional capabilities

United States District Court
Northern District of California

26

United States District Court
Northern District of California

1    is also not a "clear and convincing" reason to discredit her.  In reaching his conclusion, the ALJ

2    focused on select portions of the record and ignored others.  Specifically, the ALJ focused on

3    Walker's testimony that she "'loves' Methotrexate, and told her rheumatologist that it helped her

4    symptoms significantly, yet she testified that she continues to experience significant symptoms."

5    AR 39.  The ALJ also pointed out that Walker told Brimmer that she could "dress herself, cook,

6    wash dishes, mop, vacuum, and do laundry, as long as she takes her medications."  AR 39, 648-

7    49.  The Commissioner focuses on these same statements.  Cross-Mot. at 22.  If the ALJ and

8    Commissioner had considered Walker's statements as a whole, however, they would have found

9    that she claims that she continues to experience pain and swelling, especially when she overexerts

10   herself, despite the ameliorative effects of the medication.  AR 49-69.  Moreover, nothing in

11   Brimmer's report indicates how often Walker can do the above activities.  Walker stated in a 2012

12   Function Report that due to her joint pain, her daughter has to do most of the household chores.

13   AR 391-92.  She also claimed that she has problems dressing, carrying shopping bags, and

14   performing postural maneuvers.  AR 391, 396.  Nothing about Walker's statements as a whole is

15   plainly contradictory or suggestive of malingering. *See Valentine* at 693 (holding that an ALJ must

16   give "clear and convincing" reasons for rejecting a claimant's subjective complaints absent

17   evidence of malingering).  It is possible to experience an improvement in symptoms but still suffer

18   from debilitating pain.  *See Holohan*, 246 F.3d at 1205.  Because the ALJ did not show Walker's

19   statements to be contradictory, I find that they are not a clear and convincing reason to "question

20   to reliability of her testimony."  AR 39.

21          That Walker's statements lack medical corroboration is also not a "clear and convincing"

22   reason to discredit her.  The ALJ stated that the "claimant's presentation has been unremarkable at

23   [] most physical examinations, with at most mild tenderness in her knees and hand joints and no

24   other significant clinical findings consistently noted."  AR 39.  However, the ALJ may not reject

25   Walker's testimony simply because there is no medical evidence to support it.  *See Smolen*, 80

26   F.3d at 1282 (the claimant need not "provide objective medical evidence of the causal relationship

27   between the medically determinable impairment and the symptom." (citing *Bunnell v. Sullivan*,

28   947 F.2d 341, 345 (9th Cir. 1991)).  "This approach reflects the highly subjective and

United States District Court
Northern District of California

1    idiosyncratic nature of pain and other such symptoms." *Id.*; *see also Fair v. Bowen*, 885 F.2d 597,

2    601 (9th Cir. 1989).  The Commissioner relies on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th

3    Cir. 2008) to argue that the ALJ may discredit Walker's testimony based on lack of supporting

4    medical evidence.  Cross-Mot. at 22.  However, *Stubbs-Danielson* is not entirely persuasive

5    because the record in that case showed that "the claimant has normal activities of daily living,

6    including cooking, house cleaning, doing laundry, and helping her husband in managing

7    finances."  539 F.3d at 1175.  Here, Walker's statements as a whole allege that she is at least

8    somewhat limited in her ability to perform daily activities.  Thus, under *Smolen*, the ALJ cannot

9    reject Walker's testimony simply because it lacks medical support.

10          Despite the above errors in the ALJ's analysis, the ALJ did not err in finding that Walker

11   was "not entirely credible" based on her inconsistent statements about cocaine use.  In regards to

12   this prong, the ALJ stated that Walker "reported to her examiners that she had stopped using

13   cocaine in 2010 or 2011, but testified at the hearing that she had used cocaine at least twice in the

14   last year," which "cast[s] doubt[s] on her subjective complaints."  AR 39.  The Commissioner

15   supports this claim by pointing to specific instances where Walker allegedly lied to her examiners.

16   Cross-Mot. at 23-24.  In *Thomas*, the ALJ found that the claimant "had not been a reliable

17   historian, presenting conflicting information about her drug and alcohol usage." *Thomas*, 278

18   F.3d at 959 (internal quotations omitted).  The court found that the ALJ's inference "that this lack

19   of candor carries over to [the claimant's] description of her physical pain" was a clear and

20   convincing reason to discount the claimant's testimony. *Id.*  Here, at the hearing in April 2014,

21   Walker denied recent drug use, but then admitted that she used had used cocaine "once or twice"

22   in the past year. AR 56.  Walker reported no drug use at a consultative exam in 2009.  AR 456.

23   At an exam in January 2012, Walker reported that she stopped using cocaine in May or June 2011.

24   AR 635.  But at an exam in April 2012, Walker denied using cocaine since 2010.  AR 649.  Under

25   *Thomas*, these inconsistencies constitute a clear and convincing reason to find that Walker is not a

26   "reliable historian."  Therefore, the ALJ did not err in finding that Walker is "not entirely

27   credible" in regard to her subjective complaints.   The ALJ had at least one reason to appropriately

28   discount Walker's credibility.

## VI. THE ALJ'S CONSIDERATION OF EVIDENCE FROM PRIOR CLAIMS

Finally, Walker argues that the ALJ impliedly reopened Walker's prior SSI applications (and then failed to fully re-adjudicate those prior applications) because the ALJ expressly considered evidence submitted before November 15, 2011, the date of the latest application for benefits.  MSJ 19 (citing *Lester v. Chater*, 81 F.3d 821, 827 n.3 (9th Cir. 1995) (holding that the Commissioner can imply a de factor reopening of a prior claim "where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period"); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)).

In the Ninth Circuit, where an ALJ knows of a prior application, considers evidence of disability from that earlier period, and accepts without comment an alleged onset date of disability prior to the current application, the ALJ can be considered to have de facto reopened a prior disability claim.  *See, e.g., Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001); *see also Little v. Colvin*, No. 6:14-CV-01680-MC, 2016 WL 738759, at *5 (D. Or. Feb. 22, 2016) ("When an ALJ considers evidence of disability that predates a previous denial of disability, and the ALJ accepts 'without comment the alleged onset date,' it is appropriate to treat the ALJ's actions as a de facto reopening.").

Here, the Commissioner does not deny that the ALJ discussed evidence from prior to the November 15, 2011 application date.  Cross-Mot. at 24-25.  Rather, she argues that because plaintiff's currently-alleged onset date of disability is November 27, 1996, "virtually all of the record is relevant to the allegations in the current application."  *Id.* at 24.  She also notes that the only pre-application period evidence the ALJ considered was evidence relevant to Walker's rheumatoid arthritis.  The ALJ did so to *discount* Rana's 2009 opinion because that was issued before the onset of plaintiff's rheumatoid arthritis.  The ALJ also only gave "some weight" to the 2011 pre-application opinion of Rana because it was consistent with evidence generated within the application period (November 15, 2011 through May 5, 2014).  AR 39.  Discussion of the rejected 2009 opinion and the consistent 2011 opinion did not, according to the Commissioner, turn the ALJ's decision into one on "the merits" of disability prior to November 2011.  Cross-Mot. at 25.

I agree.  As an initial matter, there is no evidence that the ALJ actually decided *on the*

*merits* whether Walker was disabled prior to her November 15, 2011 application. While the ALJ noted the alleged onset date was November 27, 1996 (AR 28) the ALJ determined that Walker has not been under a disability since November 15, 2011. AR 41. I agree with the Commissioner that given the organization and contents of the decision, the evidence actually reviewed by the ALJ was to determine whether Walker was disabled from November 2011 through May 2014. Finally, the pre-November 2011 evidence considered was either not persuasive to the ALJ (e.g., the 2009 Rana opinion) or, at most, cumulate to the evidence post-November 2011. *See, e.g., Reyes v. Comm'r of Soc. Sec.*, No. C 10-04571 JSW, 2012 WL 1094337, at *6 (N.D. Cal. Mar. 29, 2012) ("The ALJ appears to have reviewed the medical evidence prior to June 14, 2005 as cumulative medical history and not to have considered Reyes' earlier application on the merits.'); *see also Browning v. Barnhart*, 61 F. App'x 503, 504 (9th Cir. 2003) ("Although the Attorney Advisor mentioned some evidence from the period encompassed by Plaintiff's first application for benefits, he did so only to point out that the 1996 evidence was consistent with Plaintiff's longstanding complaints."). In these circumstances, I cannot find that the ALJ impliedly opened Walker's prior applications such that the ALJ was then required to fully re-adjudicate them.

## CONCLUSION

Because the ALJ did not commit any consequential legal errors and substantial evidence supports his consideration of the medical and non-medical opinions in concluding that plaintiff is not disabled. Accordingly, I DENY plaintiff's motion for summary judgment and GRANT the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED**.

Dated: March 13, 2017



WILLIAM H. ORRICK
United States District Judge